12758

COLUMBIA NAT. BANK v. RIZER

(149 S. E., 316)

Messrs. *Kearse & Kearse,* and *B. D. Carter,* for appellant,

Messrs. *Elliott, McLain, Wardlaw & Elliott, John Roddey, Harvey & Blatt,* and *E. H. Henderson,* for respondent,

November 7, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from an order of his Honor, Judge Bonham, sustaining a demurrer interposed by the plaintiff

to a certain counterclaim set up by the defendant in his answer. The complaint states two causes of action:

(1) The execution and delivery by the Bank of Olar of a note to the plaintiff for $11,000, dated March 2, 1927, and due November 1, 1927, with interest after maturity at 8 per cent. per. annum and attorney's fees, *indorsed by the defendant.* Sundry payments are alleged to have been made upon the note, leaving a balance unpaid.

(2) The execution and delivery by the Bank of Olar of a note to the plaintiff for $5,000, dated March 22, 1927, and due December 1, 1927, with interest after maturity at 8 per cent. per annum and attorney's fees, *indorsed by the defendant.* Sundry payments are alleged to have been made upon the note, leaving a balance unpaid.

The prayer is for judgment upon the first cause of action for $4,313.02, with interest from November 1, 1927, and 10 per cent, attorney's fees, and upon the second cause of action for $94.37, with interest from December 1, 1927, and 10 per cent. attorney's fees.

The answer, after certain admissions and denials, which are not relevant to the present issue, set up a counterclaim for $100,000 damages based upon the following alleged facts, substantially reproduced:

As collateral security to the notes hereinbefore described, the Bank of Olar had assigned to the plaintiff bank certain notes of various parties, and among them were two notes of one J. P. Harley, dated February 26, 1927, and due, respectively September 1, 1927, and October 1, 1927, for $400.79 and $400, secured by mortgage of crop and personal property. On April 20, 1928, the plaintiff, as pledgee, advertised the sale of the two Harley notes in a newspaper published in the city of Columbia, at pubilc auction at the Courthouse in Columbia, on May 14, 1928, for cash. In the advertisement the Harley notes were described as above and as having been indorsed by the defendant Rizer. The defendant alleges that the notes so advertised did not bear his

indorsement, that that fact was known to the bank when it caused the advertisement to be published, and concluded his counterclaim thus:

"The defendant alleges that the publication of said notice by the plaintiff was willful, wanton and in utter disregard of the rights of the defendant, the consequences of which were well known, or should have been, to the plaintiff, in that the publishing of said notice as information to the general public was calculated to, and did, convey the false idea that the defendant was not meeting his obligations, was financially embarrassed, bankrupt or dishonest, all of which greatly embarrassed and handicapped the defendant in financing his business operations, caused creditors to withdraw their usual lines of credit and injured the defendant's reputation in the business world, and by reason of all of the foregoing the defendant has been damaged in the sum of One Hundred Thousand ($100,000.00) Dollars."

The plaintiff demurred to the counterclaim upon many grounds, only one of which we deem it necessary to consider: "(6) In that said alleged counterclaim did not arise out of the contract or transaction set forth in the complaint as a foundation of plaintiff's claim or connected with the subject of the action." The demurrer was sustained by his Honor, Judge Bonham, and from his order the defendant has appealed.

Counsel for the appellant have in due season applied for and obtained permission to review the cases of *Norwood National Bank v. Banks,* 141 S. C., 10, 139 S. E., 202, and *National Loan & Exchange Bank v. New York Insurance Company,* 149 S. C., 378, 147 S. E., 322, in both of which the proposition is broadly declared that, under Section 411 of the Code of Civil Procedure of 1922, a cause of action based upon an alleged tort *cannot be set up as a counterclaim to an action based upon contract.* The ground of the criticism is that a cause of action based upon a tort may, under said Section, be set up as a counterclaim to an

action based upon a contract, *provided that it be shown to have arisen out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim, or connected with the subject of the action.*

The criticism is well founded. The Code provides that a counterclaim must arise out of one of the following causes of action:

"(1) A cause of action arising out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or connected with the subject of the action.

"(2) In an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action."

There is nothing in subdivision 1 of the Section quoted that intimates a purpose to limit the counterclaim to causes of action based upon contracts; the only restriction is that the cause of action which is made the basis of the counterclaim shall have arisen out of the contract or transaction set forth in the complaint as the foundation of the plaintiff's claim or be connected with the subject of the action; clearly this cause of action may sound either in contract or in tort. If it had been intended that the counterclaim should be limited to causes of action based upon contracts, it would have been easy to insert a condition to that effect as was done in subdivision 2 of the Section; the absence of such a limitation presents a strong inference that none was intended.

In *Humbert v. Brisbane,* 25 S. C., 506, the plaintiff sued to recover the balance of the purchase price of a lot. The defendant set up a counterclaim based upon a trespass by the plaintiff, years after the purchase. The Court said: "This claim arises *ex delicto,* and not *ex contractu,* and therefore cannot be set up in an action like this, 'arising on contract' (Code, § 171; *Copeland v. Young,* 21 S. C., 276), unless the cause of action constituting the basis of the counterclaim arises 'out of the contract or transaction

set forth in the complaint as the foundation of the plaintiff's claim,' or unless it is 'connected with the subject of the action' "—a clear intimation that, if the cause of action, contract or tort, fulfilled the statutory conditions, the counterclaim would be proper.

The case of *Haygood v. Boney*, 43 S. C., 63, 20 S. E., 803, presents a clear example of a counterclaim in tort to an action upon a contract. In that case a laborer sued the master for a balance due for services under the contract. The defendant set up a counterclaim for damages for the death of a horse, caused by the alleged cruel treatment of the horse by the laborer while working it under the contract. The Court sustained the validity of the counterclaim upon the ground that the cause of action arose out of the contract, saying: "A part of plaintiff's obligation was to take good care of the stock, and to be at all times a faithful, diligent, and careful employee."

To the same effect is *Hughes v. Blakeley*, 115 S. C., 374, 105 S. E., 737. In that case a laborer sued the farm owner for an accounting and for the amount due to him under a sharecropper contract. The owner set up a counterclaim for damages by reason of the destruction by the laborer of a well and the damaging of buildings on the farm while in his possession under the contract. The Court held that the counterclaim was proper under the case of *Haygood v. Boney*, 43 S. C., 63, 20 S. E., 803, manifestly upon the ground that the tort which was the subject of the counterclaim arose out of a breach of the contract by the laborer, the contract upon which his cause of action was founded.

"Under the Codes, which very generally provide that a demand may be counterclaimed, if it arises out of the (contract or?) transaction sued upon, or is connected with the subject of the action, * * * it is now almost universally held that a claim which fulfils these conditions, may be interposed by defendant, as a counterclaim, although it arises out of or is based upon a tort. * * *" 34 Cyc., 706.

"The result is that to-day it is practically the unanimous rule that counterclaims in tort may be interposed in actions of contract when they fulfill the qualifications of the statute. This construction is based on the counterclaim statutes, which commonly specify three things as possible bases of counterclaims, viz.: the contract sued on, the transaction set forth, and the subject of action." 24 R. C. L., 826.

In *Rush v. Bank* (C. C. A.), 71, folio 102, it was held that the defendant in an action upon a note secured by certain collateral had the right to set up a counterclaim for damages for the wrongful appropriation of the collateral, as based upon a cause of action within the conditions of the counterclaim statute, although a tort. See, also, *Cass v. Higenbotam*, 100 N. Y., 248, 3 N. E., 189. See extended note in L. R. A., 1916-C, at page 499, where many cases are cited, showing that the Courts generally have settled upon the rule as stated in the quotations above from Cyc. and R. C. L.

The opinions in both of the cases under review were written by the writer of this opinion, and in extenuation, to some extent, of the error into which he fell, it is but fair to say that he was influenced by the declaration of that great master of the law, Chief Justice McIver, in the case of *Lenhardt v. French*, 57 S. C., 493, 35 S. E., 761, 763, which now appears a broader statement than was necessary to the decision of that case, and in its universality erroneous: "It is and must be conceded that, if the counterclaim set up in the answer is based upon a tort, it cannot be pleaded as a counterclaim to the plaintiffs' action, which is manifestly based upon a contract."

In that case the action was by the administrators of Mrs. French, the widow of Jesse French, Sr., upon a note of Jesse French, Jr., which he had given to Mrs. French. Jesse French, Jr., was the principal, if not sole, legatee and devisee under the will of Jesse French, Sr., and in the action upon

the note he set up a counterclaim, based upon the alleged fact that Mrs. French had concealed and appropriated a sum of money which belonged to her husband, the right to which passed to the defendant Jesse French, Jr., under said will. Upon the alternative whether the demand of the defendant was in tort or in contract, a controverted issue, the above declaration was made, considering it as in tort. It seems clear that the dismissal of the counterclaim, as based upon a tort, might have been sustained by the consideration that it did not arise out of the contract or transaction set forth in the complaint, and was not at all connected with the subject of the action. It follows that the two cases under review must be modified in their rulings to conform to the principle above enunciated.

The vital inquiry is whether or not the alleged counterclaim comes within the purview of the statute. Under subdivision 1 of Section 411, a counterclaim is recognized which has for its basis either: (1) a cause of action arising out of the *contract* sued upon by the plaintiff; (2) a cause of action arising out of the *transaction* sued upon by the plaintiff; (3) a cause of action connected with the subject of the plaintiff's action.

The statute is broad enough to cover a *transaction* as well as a *contract*. Every contract is of course a transaction, but every transaction is not a contract. As the defendant is relying upon his counterclaim as based upon a cause of action arising out of the *contract* set forth in the complaint as the foundation of the plaintiff's claim, or connected with the subject of the action, a separate treatment of it as a *transaction* is unnecessary. The question is, did the alleged cause of action, the basis of the counterclaim, arise out of the contract, or was it connected with the subject of the plaintiff's action?

The contracts set forth in the complaint as the foundation of the plaintiff's claims were, as stated, two notes of the Bank of Olar, dated March 2, 1927. The

tort complained of by the defendant as the basis of his counterclaim is alleged to have been committed on April 20, 1928, almost a year after the consummation of the contracts sued upon. It consisted of the publication of the false statement that the defendant Rizer was an indorser upon two notes which had been assigned by the Bank of Olar as collateral to the notes it had given to the Columbia bank, and was made in the advertisement of the sale of these notes.

For the defendant's cause of action to arise out of the contract sued upon by the plaintiff, there must have been some obligation, express or implied, in the contract, which the plaintiff owed to the defendant, of which in the present case there is a semblance; the obligation is solely that of the defendant upon his indorsement of the notes sued upon. The defendant's cause of action for a libel springs from the alleged breach by the plaintiff of its legal duty not to publish a libel against the defendant; a duty not at all attributable to anything contained in the contract sued upon, but to the law.

In Bliss, Code Pl. (3d Ed.), 562, it is said: "Under the first class, the original action being based upon a contract, if the plaintiff is liable at the suit of the defendant *in respect to the same contract,* the latter may present his demand by way of counterclaim. * * * Questions of difficulty will seldom arise in respect to this class, as it is easy to determine whether the defendant's demand arises out of the contract in suit."

If the tort does not arise out of the contract set forth in the complaint, or out of the transaction (where a transaction, and not a contract, is set forth as the basis of the complaint), or was not connected with the subject of the action, it is an independent tort and not the subject of a counterclaim. "It was, however, at an early day settled that an injury flowing from independent tort could not be asserted as set-off to a demand founded on contract." *24 R. C. L., 827,* citing, *Gogel v. Jacoby* (Pa.), 5 Serg. & R.,

117, 9 Am. Dec., 339; *Price v. Lewis,* 17 Pa., 51, 55 Am. Dec., 536; note 59 Am. Dec., 485.

"Even under the liberal practice of the Codes, an independent disconnected tort, not forming a part of the transaction sued upon as the basis of the plaintiff's cause of action or connected with the subject of the action, cannot be the basis of a counterclaim." 34 Cyc., 708.

In *Glide v. Kayser,* 142 Cal., 419, 76 P., 50, 51, it is said, quoting from *Meyer v. Quiggle,* 140 Cal., 495, 74 P., 40: "It was not the intention of the reformed procedure to allow persons having independent claims against each other, the relief authorized in one having no relation to that which could be given in the other, nor in any manner affecting it, to settle them all in one action upon the sole ground that, as they had been brought into Court to contend against each other with respect to one case or dispute, they should at that time and place settle all other matters of controversy existing between them."

In *Merritt v. Finlay,* 110 N. C., 411, 15 S. E., 4, 5, the plaintiff sued upon an accepted draft. The defendant set up a counterclaim, based upon an alleged slander of his financial standing. The Court held: "The plaintiffs complain that the defendants, being indebted to it, accepted a draft drawn on them by the plaintiff, and have failed to pay it. The defendants allege that the plaintiff slandered them as to their pecuniary standing, and injured their credit and business, and seek damages therefor by way of counterclaim. This did not arise out of contract, and therefore could not be pleaded under subsection 2 of Section 244 of the Code, nor could it be pleaded under the first subsection thereof, because it did not 'arise out of the contract or transaction which was the ground of the plaintiff's claim'; nor was it 'connected with the subject of action'—the contract made by the acceptance of plaintiff's draft."

In *Watts v. Gantt,* 42 Neb., 869, 61 N. W., 104, 107, the Court said: "The alleged counterclaims grow out of a

publication, made months afterwards, in which it is claimed there were libelous and defamatory statements of and concerning the defendant, to his injury in reputation and business. The action of the plaintiff and counterclaims of defendant rest on entirely different grounds—the plaintiff's cause of action on the contract, as embodied in the note and mortgage; and the defendant's counterclaim upon the publication of the notice of application for a receiver. The loan was made, and the note and mortgage given, and default occurred, months prior to the publication. We think it very clear that they do not arise out of the same transaction. The one arises out of the contract, and the other out of the alleged wrong committed several months afterwards; each an entire, distinct, and separate transaction in and of itself. Neither do we think that the counterclaims can be said to be connected with the subject of the action. They are radically and irreconcilably different. The subject of one is a contract, and the other a tort—no connection between the two. It is true that the notice published was a notice in the case in which the mortgage was being foreclosed, but this fact cannot connect the facts which are combined to compose the alleged counterclaims with the facts entering into and forming the plaintiff's cause of action. They were widely separated as to the time of their occurrence, and entirely different and distinct in their facts; and, although one is caused by the publication of a notice in a suit pending in regard to the other, in their subject-matter there is no possible connection between them."

In *Pittman v. Keith* (Tex. Civ. App.), 24 S. W., 88, it was held, quoting syllabus: "A claim for damages for the malicious institution of criminal proceedings by the seller of goods against the purchaser, for alleged false and fraudulent representations as to solvency, in the faith of which they were obtained, is not a 'cause of action arising out of or incident to, or connected with' the seller's cause of action for

the purchase price, within the meaning of Rev. St., Arts. 649, 650, which provide that a claim for unliquidated damages for tort can be pleaded in set-off or counterclaim to a certain demand only when such claim arises out of, or is incident to or connected with, plaintiff's cause of action."

In *Kuhn v. Co.*, 115 Wis., 447, 91 N. W., 994, 997, 60 L. R. A., 585, the Court said: "If a person, while in the store of another by that other's implied invitation, received an injury by the latter's negligence and sued to recover therefor; no one would claim, we apprehend, that such other could counterclaim for an indebtedness contracted by such person to him on the occasion of the injury. The two would have no necessary legal or equitable connection. They would constitute two entirely independent claims. Therefore, neither could be said to grow out of or be connected with the subject-matter of the other."

In *Tuthill v. Sherman*, 32 S. D., 103, 142 N. W., 257, the plaintiff began an action *upon a note* by attachment and maliciously caused an excessive levy to be made. The defendant set up a counterclaim for damages on account of the excessive levy. Upon demurrer to the counterclaim it was held that the cause of action upon which it was based did not arise out of the contract sued upon and that it was not connected with the plaintiff's cause of action and was therefore subject to dismissal upon demurrer.

In *Jones v. Swank*, 54 Minn., 259, 55 N. W., 1126, 1127, an excessive levy under an attachment in an action for goods sold was made. The defendant set up a counterclaim for damages. A demurrer to the counterclaim was sustained upon the ground that the cause of action upon which it was based did not arise out of the contract sued upon and was not connected with the subject of the action. The Court said: "The defendant's right to recover damages for an abuse of the writ of attachment arose, if at all, out of plaintiff's attempt to secure and collect the amount of their claims through attachment proceedings, and in no way were

these proceedings connected with the subject of the action. The facts upon which defendant rested his alleged counterclaim arose subsequent to, and were wholly independent of, those set forth in the complaint, and had no connection with them."

In *Esbensen v. Hover,* 3 Colo. App., 467, 33 P., 1008, 1009, it was held that in an action for goods sold the defendant could not set up a counterclaim for damages arising from an excessive levy under an attachment. The Court said: "This counterclaim did not arise out of the transaction set forth in the complaint, and was not connected with the subject of the action. The transaction was the sale and delivery of the goods, and the price of the goods was the subject of the action. With such sale and delivery, or with such price, the counterclaim has nothing to do. It arises out of an alleged tort committed in the course of the prosecution by the plaintiffs of their remedy for the enforcement of the claim. It had no existence when the alleged writ was issued, and, if no writ had been issued in the case, it never would have had an existence. It was a wrong done to the defendant, not necessary to the enforcement of plaintiffs' remedy, and is on the same footing with any other wrong which the plaintiffs might have committed upon the defendant. The Court very properly sustained the demurrer."

In Bliss on Code Pleading (3d. Ed.), 214, it is said: "The *cause of action* has been described as being a legal wrong threatened or committed against the complaining party; and the *object of the action* is to prevent or redress the wrong by obtaining some legal relief. *The subject of the action* is, clearly, neither of these; it is not the wrong which gives the plaintiff the right to ask the interposition of the Court, nor is it that which the Court is asked to do for him, but it must be the matter or thing, differing both from the wrong and the relief, in regard to which the controversy has arisen, concerning which the wrong has been

done; and this is, ordinarily, the property, or the contract and its subject-matter, or other thing involved in the dispute." It seems clear that the alleged libel was an independent tort, not at all connected with the notes sued upon, the *subject of the action*.

In *Harberle Co. v. Handrahan,* 100 Misc. Rep., 163, 165, N. Y. S., 251, it is held: "A counterclaim, to be 'connected with the subject of the action,' must be directly connected, so that the parties could be supposed to have foreseen and contemplated it in their mutual acts." See, also, *Humbert v. Brisbane,* 25 S. C., 506; *Bank v. Bank,* 127 S. C. 210, 119 S. E., 841; *Tucker v. Bank,* 139 S. C., 206, 137 S. E., 601. The present counterclaim clearly does not come within this rule.

The judgment of this Court is that the order appealed from be affirmed.

MR. CHIEF JUSTICE WATTS, and MESSRS. JUSTICES BLEASE, STABLER, and CARTER concur.